UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTINA WEAVER, ADMINISTRATIX, OF THE ESTATE OF JOSEPH J. O'DONNELL, ET AL.<br>    Plaintiffs, | : : : : : | CIVIL CASE NO.<br>3:22-CV-00352 (JCH) |
| v. | : : | |
| UNITED STATES OF AMERICA,<br>    Defendants. | : : : | SEPTEMBER 12, 2023 |

**RULING ON INTERVENOR PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS (DOC. NO. 63)**

**I.      INTRODUCTION**

Plaintiff Christina Weaver ("Ms. Weaver"), individually and as Administratrix of her deceased spouse, Joseph J. O'Donnell ("Mr. O'Donnell"), brings this action against the United States (the "Government"), Veteran Construction Services, LLC ("VCS"), and McKenney Mechanical Contractors, Inc. ("McKenney"), alleging wrongful death and loss of consortium.  Am. Compl. (Doc. No. 39).  Plaintiff Mulvaney Mechanical, Inc. ("Mulvaney) intervened, seeking subrogation and a lien against any recovery for the wrongful death claim pursuant to Conn. Gen. Stat. section 31-293 ("Connecticut Workers' Compensation Act").  See Mot. to Intervene (Doc. No. 18); Intervenor Compl. (Doc. No. 26).  The Government filed a Counterclaim against Mulvaney. (Doc. No. 42).

Before the court is Mulvaney's Motion to Dismiss Counterclaims, which the Government opposes.  See Mot. to Dismiss (Doc. No. 63); Mem. of Law in Supp. of Mot. to Dismiss ("Mem.") (Doc. No. 64); Opp'n to Def. Mulvaney's Mot. to Dismiss ("Mem. in Opp'n") (Doc. No 69).  For the reasons set forth below, the court grants in part and denies in part the Motion to Dismiss.

1

## II.   BACKGROUND

### A.   Alleged Facts

This action was commenced by Ms. Weaver, the Administratrix of Mr. O'Donnell's Estate, following Mr. O'Donnell's death at the Veterans Affairs Connecticut HealthCare System Hospital ("VA") in West Haven, CT.  See Am. Compl. at ¶ 1 (Doc. No. 39).  The court provides a summary of allegations relevant to this Ruling with reference to Ms. Weaver's Amended Complaint and the Government's Counterclaim, as well as other background information.

On November 4, 2020, after steam and condensate leaked from a pipe in an area near Building 2022 at the VA, a repair request was made.  Id. at ¶¶ 71-73.  Two days later, on November 6, 2022, the VA's plumbing department closed the valve controlling the steam distribution system in Building 22 for an asbestos abatement project and left it closed even following completion of the project.  Id. at ¶¶ 75, 77.  On or about November 5, 2020, the VA contracted with Mulvaney to repair the leaky pipe connected to the steam distribution system.  Id. at ¶¶ 83, 88; Counterclaim at ¶ 9.

On November 13, 2020, Mr. O'Donnell, an employee of Mulvaney, was dispatched to complete the repair.  Am. Compl. at ¶ 88; Counterclaim at ¶¶ 12-13.  After completing the job, Mr. O'Donnell, accompanied by VA employee Euel Sims ("Mr. Sims"), opened the valve necessary to introduce live stream to Building 22 in order to test the repair.  Am. Compl. at ¶¶ 91-92.; Counterclaim ¶ ¶14-15.  Upon re-pressurization, the system failed, and the steam flooded the room, causing a change in pressure that sealed the door to the room.  Am. Compl. at ¶¶ 96-99; Counterclaim at ¶ 16.  Despite efforts to escape, the door could not be opened, trapping Mr. O'Donnell

and Mr. Sims and resulting in their death.  Am. Compl. at ¶¶ 100-102; Counterclaim at ¶ 17.

      B.      Procedural History

On March 4, 2022, Ms. Weaver, individually and as Administratrix of her husband's Estate, filed her Complaint against the USA under the FTCA. (Doc. No. 1). On September 19, 2022, Mulvaney filed its Intervenor Complaint, bringing a subrogation claim.  Intervenor Compl. (Doc. No. 26).  Mulvaney argues that pursuant to Conn. Gen. Stat § 31-293 (2012) ("Connecticut Workers' Compensation Act"), it is entitled to reimbursement from or credit against any future recovery Ms. Weaver receives, excluding recovery for loss of consortium.  Id.  On November 10, 2022, VCS and McKenney were joined as defendants.  (Doc. No. 38).  Subsequently, Ms. Weaver amended her Complaint to assert wrongful death and loss of consortium claims against all defendants.  See Am. Compl. (Doc. No. 39).

On December 2, 2022, the Government answered Mulvaney's Intervenor Complaint and asserted a counterclaim against Mulvaney.  See Answer and Counterclaim ("Counterclaim") (Doc. No. 42).  In its Counterclaim, the Government alleges three counts: negligence/negligent supervision, indemnification, and apportionment.  Id.

On January 6, 2023, Mulvaney moved to dismiss the Counterclaim, arguing that the Connecticut Workers' Compensation Act bars the Government's claims for indemnity and apportionment and additionally that the Government failed to allege sufficient facts to establish a common law indemnity claim.  See Mot. to Dismiss (Doc. No. 63); Mem. (Doc. No. 64).  On January 27, 2023, the Government filed its opposition to Mulvaney's Motion to Dismiss.  See Mem. in Opp'n (Doc. No. 69).

**III.     STANDARD OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 2(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

**IV.     DISCUSSION**

In Count One, the Government claims that Mulvaney breached its contract by negligent performance of the repair and the negligent supervision of Mr. O'Donnell, which not only caused the steam incident and Mr. O'Donnell's death but, additionally, loss to the Government, including cost of repairing and replacing the VA system and defense of this litigation.  Id. at ¶¶ 18-20.  In Count Two, the Government argues that it is entitled to indemnification because Mulvaney failed to perform duties required under its contract with the Government and Mulvaney had exclusive control of the circumstances that led to the incident.  Id. at ¶¶ 21-30.  In Count Three, the Government contends it is entitled to apportionment of liability from Mulvaney if it is found liable to Ms. Weaver.  Id. at ¶ 35.

Mulvaney moves to dismiss on three grounds.  First, Mulvaney seeks dismissal of the Government's Counterclaim on the ground that it is barred by the Connecticut Workers' Compensation Act.  Mem. at 2.  As to Count Two, Mulvaney argues that the Government did not plead allegations sufficient to establish a common law indemnification claim.  Id. at 11-13.  Lastly, Mulvaney argues that the Connecticut Workers' Compensation Act bars the Government's apportionment claim.  Id. at 13-14.

      A.      <u>Indemnity Claim Under Connecticut's Workers' Compensation Act</u>

Mulvaney contends that Connecticut Workers' Compensation Act's provision—limiting the liability of an employer who furnishes benefits pursuant to the Act—bars the Government's Counterclaim.  Mem. at 6-11.  Mulvaney recognizes that a narrow exception exists, allowing a defendant to seek indemnity from an employer, id. at 7-9, but argues that the Government's allegations are insufficient to fall within that exception.  Id. at 9-11.

The Government counters that its claims are not barred by statute because it sufficiently alleges an independent legal duty.  Mem. in Opp'n at 4-8.  The Government emphasizes that, in addition to alleging a contractual relationship which commenced on or about November 5, 2020, when the VA requested Mulvaney's services, it claims Mulvaney owed the Government a duty to perform the repair in a "safe and workmanlike manner" that would result "in a steam distribution system that was safe."  Id. at 5 (citing Counterclaim at ¶ 19.j).  The Government further notes that the Counterclaim "specifically details the manner in which Mulvaney failed to exercise due care in the performance of its contract," such as failing to prepare a plan or communicate protocols for safe performance and failing to take appropriate steps to recharge the steam distribution system.  Id. at 6.

5

As Mulvaney correctly delineates, the Connecticut Workers' Compensation Act provides that an employer who furnishes workers' compensation as required under the statute is not liable for damages for injuries sustained "arising out of or during the course of employment."  Conn. Gen. Stat. § 31-284(a).  Consequently, while a right to indemnity based on the primary or active tortfeasor's duty to bear the burden of damages is implied in some contexts, it is barred by the immunity conferred by the Connecticut Workers' Compensation Act.  Ferryman v. City of Groton, 212 Conn. 138, 144 (1989).  To hold otherwise "would obviate the operation of the exclusive remedy doctrine."  Id. at 145.  However, the Connecticut Supreme Court has long recognized a limited exception.  See Ferryman v. City of Groton, 212 Conn. 138 (1989).  While the Act limits an employer's liability to its employee, it does not limit its liability to other parties.  See, e.g., Ferryman, 212 Conn. at 143-44.  Thus, a claim against an employer predicated on an express indemnification or an implied right to indemnity arising out of breach of a legal duty is not barred by the Connecticut Workers' Compensation Act.  Id. at 145; see also Matter of Liquid Waste Tech., LLC, No. 3:18-cv-01306, 2022 WL 4132939, at *5 (D. Conn. Sept. 12, 2022); Kelley v. City of Danbury, No. X10UWYCV186051612S, 2021 WL 5919784, at *4 (Conn. Super. Ct. Dec. 3, 2021).

Here, the Government does not base its claim for indemnity entirely on a theory of joint negligence.  Mulvaney argues that the Government has failed to allege that Mulvaney owes the Government a duty not derivative of the duty it owed to Mr. O'Donnell.  See Mem. at 9.  However, the Counterclaim details an independent relationship between Mulvaney and the Government.  The Government affirmatively asserts that not only did Mulvaney retain exclusive control over the circumstances that

led to Mr. O'Donnell's death and Ms. Weaver's loss of consortium, but that Mulvaney's actions also resulted in a breach of duty owed to the Government under the repair contract.  Counterclaim at ¶¶ 23, 25.  Moreover, the Government claims that Mulvaney caused injury to the Government, including, the cost to repair and replace the VA system and defense of this litigation.  Id. at ¶ 20.

Furthermore, Mulvaney's argument—that alleging a contractual relationship without more is insufficient to imply a right to indemnity—is premature.  See Mem. at 9. For this proposition, Mulvaney primarily relies on this court's opinion in Hernandez v. Cavaliere Custom Homes, Inc., 511 F. Supp. 2d 221, 227 (D. Conn. 2007) (holding that a contractual relationship is not sufficient to create an implied duty of indemnification). However, in front of this court in Hernandez was a motion for summary judgment, and this court ruled in the employer's favor because the contract at issue neither expressly included a duty to indemnify nor did its language imply such a duty.  F. Supp. 2d at 227-29.  To survive a motion to strike, Ferryman only requires that the party seeking indemnity allege facts sufficient to establish the essentials of a relationship that could give rise to a duty to indemnify.  212 Conn. at 145-46 (emphasis added).  The Ferryman Court denied the employer's motion to strike because the alleged control the employer held over the property at issue "disclose[d] the essentials of either a co-owner relationship, a bailor-bailee relationship or a lessor-lessee relationship, any one of which could contain the express or implied independent legal duty that would serve to preclude the exclusive remedy provisions of § 31-284."  212 Conn. at 145.

Even if, in order to defeat a Motion to Dismiss under Federal Rule 12(b)(6), a claimant is required to allege more than the essentials of a legal relationship, the

7

Government has done so in the case at bar.  In Hernandez, this court held that "an explicit agreement to perform work with 'due care' or 'in a reasonably safe manner'" would overcome the exclusive remedy provision."  211 F. Supp. 2d. at 229.  In contrast, a contractual duty to perform in a "workmanlike manner" or in accordance with industry standards "only define[s] a contractual commitment [the employer] was already assuming when it agreed to do a specific job", and thus does not give rise to a duty to indemnify.  Id.  As discussed, see pp. 6-7, supra, the Government alleges that Mulvaney owed it a duty to perform its work safely and details the ways it allegedly breached this duty.  Counterclaim at ¶ 19; see also Mem. in Opp'n at 6-7.

Therefore, for the reasons stated, the Connecticut Workers' Compensation Act does not bar the Government's indemnification claims against.

  B.  Common Law Indemnification

As another ground for dismissal, Mulvaney argues that the Government fails to sufficiently plead a requisite element for a common law indemnity claim in Connecticut.  Id. at 12-13.  Mulvaney asserts that the Government does not allege that Mulvaney was in exclusive control of the circumstances and that the Government could not make such arguments because Mr. Sims was present at the time of the event.  Id. at 13.

The Government counterargues that the premise of this argument is a factual dispute and is, thus, inappropriate for resolution at the Motion to Dismiss stage.  Mem. in Opp'n at 9.  Nonetheless, the Government argues that, in its Counterclaim, it explicitly alleges exclusive control.  Mem. in Opp'n at 8.  The Government additionally argues that nothing in the pleadings, including the alleged facts that Mr. Sims was present at the time of the event and that Building 22 was government property, "wrested exclusive control from Mulvaney."  Id. at 8-9.

In Connecticut, a primary or active tortfeasor has a duty to indemnify a secondary or passive tortfeasor. Smith v. City of New Haven, 258 Conn. 56, 66 (2001). A claimant seeking common law indemnification "must show that: (1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting injuries and death; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent." Id. (citing Kaplan v. Merberg Wrecking Corp., 152 Conn. 405, 416 (1965)); see also Matter of Liquid Waste Tech, LLC, 2022 WL 4132939, at *7 (D. Conn. Sept. 2, 2022).

In the case at bar, Mulvaney provides Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694 (1997) and Pellecchia v. Conn. Light & Power Co., 139 Conn. App. 767 (2012) as instances where Connecticut courts found that third party defendants did not have exclusive control of the situation. See Mem. at 12-13. Mulvaney fails to account for the fact that Skuzinski and Pellecchia presented "special circumstances." 240 Conn. at 705; 139 Conn. App. at 775. While the issue of exclusive control is normally a question of fact, "special circumstances may give rise to the question of whether, in light of the facts alleged in the third party complaint, any reasonable juror could find that the third party defendants had exclusive control of the situation." Skuzinski, 240 Conn. at 705. In Skuzinski, the court ruled that exclusive control of the premises alone did not constitute exclusive control of the situation. 240 Conn. at 705. In Pellecchia, where an emergency-services company negligently failed to warn a power company that its power

9

line was downed, the court, on appeal, clarified that the "the situation" over which exclusive control was required was the downed power line and not the failure to warn. 139 Conn. App. at 775.  However, in the instant case, nothing in the pleadings create an inference that the issue of exclusive control gives rise to a question of law, and Mulvaney has not presented arguments to the contrary.

The Counterclaim otherwise includes sufficient factual allegations to survive Mulvaney's Motion to Dismiss.  The Government alleges that it retained Mulvaney, under contract, to repair a pipe connected the steam distribution system in Building 22 and that the "[s]cheduling of the repair, personnel assigned to the repair, and manner and method of the repair, were at the discretion of Mulvaney."  Counterclaim at ¶¶ 8-9, 11.  These allegations plausibly give rise to an inference that Mulvaney was in exclusive control of the situation that led to Mr. O'Donnell's death.  Whether Mr. Sims' presence wrested exclusive control from Mulvaney is a question of fact not suited for resolution at this stage.

Accordingly, Mulvaney's Motion to Dismiss is denied with respect to the Government's common law indemnification claim.

C.     Apportionment of Liability

The Government claims that, pursuant to Conn. Gen. Stat. § 52-102b, it is entitled to apportionment of liability for any recovery Ms. Weaver receives as Administratrix of Mr. O'Donnell's Estate.  Counterclaim at ¶ 35.  Beyond citing to § 52-102b in its Counterclaim, the Government does not articulate arguments independent from those presented in support of its indemnification claim nor does it cite to any case law that supports its right to apportionment.  Id. at ¶¶ 34-35; Mem. in Opp'n at 4-8.

The Government ignores the text of the statute it cites in support of its apportionment claim. Subsection (c) of § 52-102b plainly states, "No person who is immune from liability shall be made an apportionment defendant nor shall such person's liability be considered for apportionment purposes pursuant to section 52-572h." § 52-102b(c). Furthermore, Connecticut courts have construed the Ferryman exception narrowly as applying only to indemnification claims. See, e.g., Kimerle v. Freelife Intern. Operating Corp., No. CV 0404152S, 998 WL 69935, at *3 ("Courts generally find that the Ferryman exception applies only to claims for indemnification."); Folsom v. Montanino, No. CV136039582S, 2015 WL 4965777, at * 2 (Conn. Super. Ct. July 23, 2015). Consequently, the Government's claim for apportionment does not fall within the limited exception recognized by Ferryman and is thus barred by the exclusivity provision.

The Motion to Dismiss is granted on any apportionment claims.

**V.   Conclusion**

For the reasons stated above, the court grants in part and denies in part Mulvaney's Motion to Dismiss (Doc. No. 63). The Government's apportionment claim is dismissed. The Motion to Dismiss is otherwise denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 12th day of September 2023.

    /s/ Janet C. Hall  
Janet C. Hall  
United States District Judge